**In the Matter of the ESTATE OF Joseph KROSLACK, Sr., Deceased.**

**Joseph KROSLACK, Jr., Personal Representative, Appellant,**

v.

**Mary L. KROSLACK, Appellee.**

**No. 45A04–8912–CV–546.**

Court of Appeals of Indiana,
Third District.

April 29, 1991.

---

**4.** We of course draw no conclusions about the merits of these claims.

William J. Moran, Highland, for appellant.

William P. Hapaniewski, Merrillville, for appellee.

HOFFMAN, Presiding Judge.

Appellant Joseph F. Kroslack, Jr. as personal representative of the estate of his father, Joseph Kroslack, Sr., appeals a trial court award of costs, attorney's fees and interest in favor of appellee Mary L. Kroslack, the decedent's widow. The award followed several years of litigation at both the trial and appellate levels during which appellee sought to recover the statutory widow's allowance of $8,500.00. *See Kroslack v. Estate of Kroslack* (1987), Ind., 504

N.E.2d 1024, *vacating* Ind.App., 489 N.E.2d 650. The Supreme Court's opinion in *Kroslack* found:

"[T]he son consistently exercised bad faith as executor of his father's estate. From the time of his appointment, the son failed in his fiduciary duty to act in the best interests of the estate. His first inventory did not include three of the four multi-party accounts which the court later found to be liable to the estate. When claims were made against the estate for funeral expenses and estate taxes, he made no effort to collect funds from the multi-party accounts as contemplated by § 32–4–1.5–7. Rather, he compromised the claims, moved to have the estate declared insolvent, and gallantly waived any fee or claim as personal representative.

The son was obviously not motivated by the best interests of the estate, but by his personal interest in protecting the funds of the multi-party beneficiaries. This violation of good faith on the part of the son would preclude him from invoking the equitable authority of the court to approve a compromise because he could not be said to come forward with 'clean hands.' [Footnote omitted.]

\* \* \* \* \* \*

Thus, the estate should not have had to bear any cost of 'good faith' litigation by the son. In effect, the son has blackmailed both the special administrator and the trial court into approving a settlement which is clearly not in the best interests of the estate by dealing in bad faith and in his own self-interest and threatening to continue such behavior at the expense of the estate. Settlement by the special administrator appears to have been motivated by a desire to conclude a lengthy and unpleasant probate. Nevertheless, approval of the settlement rewarded the son's obdurate behavior rather than punished it."

504 N.E.2d at 1027.

The court remanded the cause for further proceedings "relating to the collection of assets and payment of the widow's share." *Id.*

On remand, a hearing was held by the trial court on December 4, 1987 and concluded on June 10, 1988. At the hearing, evidence was presented on appellee's April 8, 1987 petition for *inter alia* the widow's allowance, attorney's fees and interest. The petition requested $6,630.00 in interest and $36,105.00 in attorney's fees. Pursuant to appellant's request, the trial court entered findings of fact and conclusions of law. In summary, the trial court found that the Supreme Court had determined that the appellant acted in bad faith and with obdurate behavior; that the appellant continued to litigate a defense after it became frivolous, groundless and unreasonable; that law regarding the award of attorney's fees appears in IND.CODE § 34–1–32–1; that the court received evidence as to the appellee's attorney's fees; and that "[t]his trial court must balance the legal interest of the [parties] ... [and denial of attorney's fees to appellee] would be a windfall to [appellant] and [in] complete defiance ... of the Supreme Court's opinion...." Also, the trial court found that the appellee was entitled to interest from January 14, 1981, the date that she made demand for the widow's allowance, to September 30, 1988, the date of the order. The trial court concluded that appellee was entitled to recover the widow's allowance of $8,500.00, interest in the sum of $6,630.00, and attorney's fees in the sum of $17,500.00. This appeal ensued.

The appellant's issues may be restated as:

(1) whether the trial court erred in granting $17,500.00 in attorney's fees; and

(2) whether the trial court erred in awarding $6,630.00 in interest.

■ As to the award of attorney's fees, the appellant argues that IND.CODE § 34–1–32–1 does not support the award in this case because the amendment allowing attorney's fees did not become effective until September 1986. By appellee's attorney's admission, the bulk of the fees were incurred between January 1981 and March 1986. The statute, prior to the amendment effective September 1986, provided "[i]n all civil actions, the party recovering judgment

shall recover costs, except in those cases in which a different provision is made by law." IND.CODE § 34–1–32–1 (1982) (amended 1986). The 1986 amendment provides in pertinent part that:

"(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith."
IND.CODE § 34–1–32–1(b) (1986 Supp.).

The question whether the statute should be accorded retroactive application may be reserved for another day. An alternative equitable basis for the award exists.

A court's power to award attorney's fees to a party has long been established. In *Saint Joseph's College et al. v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865, 870–71, the Court addressed the granting of attorney's fees when not specifically allowed by statute, agreement, or stipulation. The Court determined that when a party fails to comply with a statute allowing attorney's fees, equity cannot be invoked to rescue a claim for attorney's fees. *Id.*, 302 N.E.2d at 870. However, the Court observed that exceptions to the American rule of not granting attorney's fees absent a statute had been recognized at common law in the "obdurate behavior" situation, the "common fund" situation, the "private attorney general" situation, and in cases of oppressive and vexatious conduct in the extreme. *Id.*, 302 N.E.2d at 870–71. The Court noted that the ability to grant attorney's fees "springs from the equitable powers of the court." [Citations omitted.] *Id.*, 302 N.E.2d at 870.

The theme that a court, through its inherent equitable authority, may grant attorney's fees has been echoed by members of the court subsequent to the *Morrison* decision.

*See e.g. Maggio v. Lee* (1987), Ind.App., 511 N.E.2d 1084, 1086 Sullivan, J. concurring;

*Cox v. Ubik* (1981), Ind.App., 424 N.E.2d 127, 129. The concurring opinion in *Maggio, supra,* referred to cases in which the court has assessed attorney's fees against a party based in part upon the court's inherent equitable power. *Maggio, supra,* 511 N.E.2d at 1086. In *Maggio,* Judge Sullivan considered the majority's decision reversing an award of attorney's fees under Ind.Trial Rule 53.5 because such fees were not specifically authorized under the rule. *Id.* Judge Sullivan stated:

"[N]otwithstanding the 'American Rule' and notwithstanding specific inclusion in other trial rules of attorney fees as recoverable, I am of the view that the courts have the inherent authority to award attorney fees where necessary to compensate a litigant who has been unduly burdened or prejudiced. *See Hamilton v. Hamilton* (1986), 2d Dist.Ind. App., 489 N.E.2d 590, *trans. denied; State v. Hicks* (1984) 2d Dist.Ind.App., 465 N.E.2d 1146 (Sullivan, J. concurring, 465 N.E.2d at 1151 *et seq.*); *Briggs v. Clinton County Bank & Trust Co.* (1983) 2d Dist.Ind.App., 452 N.E.2d 989, *trans. denied.*"
*Id.*

It should be noted that the present cause does not fall under the specific exceptions to the American rule outlined in *Morrison, supra:* the obdurate behavior, the private attorney general, and the common fund exceptions. The private attorney general and common fund exceptions are inapplicable on their faces. The obdurate behavior exception, while facially an attractive avenue in cases of bad faith, is not appropriate in the present case. The obdurate behavior exception has been limited to situations in which the defendant has been forced to defend a baseless claim.

*See Kikkert v. Krumm* (1985), Ind., 474 N.E.2d 503, 505;

*Kahn v. Cundiff* (1989), Ind.App., 533 N.E.2d 164, 171, *adopted* 543 N.E.2d 627; Clementson–Mohr and Cooke, *Frivolous, Unreasonable, or Groundless Litiga-*

*tion: What Shall the Standard Be for Awarding Attorney's Fees?* (1989) 22 Ind.L.Rev. 299, 300–301 (questioning apparent lack of policy reason to discourage abuse of the legal system by a plaintiff, but not a defendant with similar motivation).

■ Absent retrospective application of the statute or use of the common-law "obdurate behavior" exception to the American rule, appellant contends that the attorney's fee award must fail. Such is not the case. To allow a party to effectively "blackmail" a court and litigate a matter in bad-faith, and then to grant the party asylum from the award of attorney's fees by finding that the law insulates the party from liability for the obstreperous conduct, would render impotent a court's power to prevent such abuse of the legal system. Thus, a court may in its inherent equitable power, determine that an award of attorney's fees is appropriate under the circumstances of a particular case after a determination that a party has acted in bad-faith and such conduct is calculatedly oppressive, obdurate, or obstreperous. This inherent power is not tied to a particular statute or to one of the common-law exceptions to the American rule outlined in *Morrison, supra.* Rather, this inherent equitable power resides in a state of dormancy until called upon to rectify conduct "vexatious and oppressive in the extreme." *Cf. Morrison, supra,* 302 N.E.2d at 871.

■ Appellant argues that the trial court's special findings do not support the award. Special findings must contain all facts necessary to recovery by a party and the ultimate facts from which the court has determined the legal rights of the parties. *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354, 1357. The purpose of special findings is to provide parties and reviewing courts with the theory upon which the court's determination was made, thereby preserving the right of review for error. *Id.* A court on review must determine whether the specific findings are adequate to support the trial court's decision. *Id.* The findings are adequate if they disclose a valid basis under the issues to support the result reached in the judgment. *Id.*

Although the trial court included IND. CODE § 34–1–32–1 as a basis for the attorney's fee award, the court also based the award on equitable grounds. The trial court's special findings adequately preserved appellant's right to review and contained a viable theory to sustain the award of attorney's fees as within the inherent equitable powers of the court.

■ Having determined that the award of attorney's fees was proper under the circumstances of this case, the amount of the award must also be addressed at the urging of the appellant. At the December 4, 1987 hearing which was continued to June 10, 1988, the attorney for appellee presented evidence as to the reasonableness of the hourly charge and time spent in pursuit of the widow's allowance for the appellee. Although the evidence was in conflict as to the reasonableness of the time spent on certain aspects of the case, the court's award of $17,500.00 is supported by the record. The trial court's award is approximately one-half of the amount claimed by the attorney for appellee. The trial court considered the reasonableness of the claim in making its determination. *Gibson–Lewis Corp. v. N. Ind. Pub. Serv.* (1988), Ind.App., 524 N.E.2d 1316, 1319–1320 (where award of attorney's fees proper, decision reviewable only for abuse of discretion even when no evidence presented on amount because court is an expert on value of attorney's services).

Also, it should be noted that the award for the attorney's fee appears disproportionate to the amount ultimately gained by the appellee. However, due to appellant's obdurate behavior, the matter was in some form of litigation for a period in excess of seven years while the appellant resisted payment of the statutory widow's allowance. Although the award of attorney's fees is supported by the record, unquestionably the attorney for appellee could have maintained a more complete record of his time.

■ Next, the appellant questions the award of interest to the appellee on her claim for the widow's allowance. The appellant claims that the appellee is entitled to interest on the judgment under IND. CODE § 24–4.6–1–101 only. The appellant contends that the judgment was rendered on March 13, 1987 when the decision by the Supreme Court was dated and that because he had deposited $8,000.00 with the clerk of the court prior to that time, interest could only accumulate on the remaining $500.00 of the widow's allowance which he failed to deposit with the court until December 1987. The appellant ignores the provisions for prejudgment interest in his argument.

■ IND.CODE § 24–4.6–1–103 (1982 Ed.) allows prejudgment interest at the rate of 8% per annum "from the date an itemized bill shall have been rendered and payment demanded on an account stated...." Further, the statute does not constitute the only authority for awarding prejudgment interest. *Koppers Co., Inc. v. Inland Steel Co.* (1986), Ind.App., 498 N.E.2d 1247, 1255. Prejudgment interest may be awarded where the damages sought are complete and ascertainable as of a particular time, and are necessary to fully compensate the injured party for having been deprived of the use of the money owed.

*Id.;*
see also *Gibson–Lewis Corp., supra,* at 1319.

Here, as the trial court specifically found, the amount of the widow's allowance was demanded on January 14, 1981. The appellant sought to deny the appellee the $8,500.00 in bad faith over a period of more than six years. Appellee did not receive any portion of the widow's allowance until the trial court issued an order on June 4, 1987 instructing the clerk of the court to immediately disburse to the appellee $8,000.00. Appellant had deposited that amount with the clerk in 1984 as a compromise settlement, which settlement appellee rejected. The order was entered after the April 8, 1987 petition for *inter alia* the widow's allowance, and a May 8, 1987 brief in support filed by the appellee. Conse-

quently, as of the December 4, 1987 hearing on attorney's fees and interest, the appellee had incurred further attorney's fees in pursuit of the widow's allowance. Moreover, the appellant failed to deposit the remaining $500.00 for the widow's allowance until December 7, 1987, approximately nine months after the Supreme Court's ruling. The appellant's July 7, 1987 answer opposing the petition was directed solely to the attorney's fees and interest. Appellant's actions in failing to deposit the remaining portion of the widow's allowance were patently defiant, and forced the appellee and her attorney to incur further expenses.

Depositing $8,000.00 with the clerk of the court while litigating in bad faith as to appellee's right to the sum cannot insulate appellant from the prejudgment interest award. Appellee is entitled to interest on the $8,000.00 until June 4, 1987 when the court ordered the amount disbursed to appellee, not until the date of the trial court's order awarding attorney's fees and interest. Appellee is entitled to interest on the remaining $500.00 until the date of the order awarding attorney's fees and interest inasmuch as the record does not reflect payment of that amount to appellee prior to the date of the order. Further, the cause must be remanded for a calculation of the interest at the statutory rate of 8% per annum, rather than the 12% rate employed by the court.

Accordingly, the trial court's award of attorney's fees is affirmed, and the award of prejudgment interest is affirmed. The cause is remanded for recalculation of the amount of the prejudgment interest. The $8,000.00 disbursed on June 4, 1987 must be calculated separately from the $500.00 which remained unpaid as of the date of the trial court's order awarding attorney's fees and interest. On remand the amount of prejudgment interest should be calculated at the statutory rate 8% per annum.

CHEZEM, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

The actions of Joseph Kroslack, Jr. were said to be "in bad faith and with obdurate behavior". He litigated a defense "after it had become frivolous, groundless and unreasonable". This is certainly obdurate conduct. The majority, however, feels unable to justify the award of attorney fees on this basis. The majority believes that an obdurate behavior award may only be made in favor of a defendant. I believe the majority to be in error in this respect.

*Kikkert v. Krumm* (1985) Ind., 474 N.E.2d 503, does use the plaintiff-defendant distinction as one of two reasons for not applying the obdurate behavior exception. However, the heart of that decision was the fact that the obdurate conduct occurred not as part of a law suit but was the very conduct which gave rise to the other party's claim.

*Kahn v. Cundiff* (1989) 1st Dist.Ind. App., 533 N.E.2d 164, adopted upon transfer 543 N.E.2d 627, did not discuss the obdurate behavior exception except in the context of I.C. 34-1-32-1 itself. Kahn was apparently arguing that the statute merely codified the common law standard. In this connection, the statute clearly contemplates a fee award against "either party" with regard to an "action or defense".

In my view, the inherent power of the court to award fees as part of the common law exception to the American Rule includes the power to award fees to a plaintiff who has been made to litigate against a clearly frivolous defense. Subject to these comments, I concur in the award of attorney fees in the amount of $17,500.

I fully concur in the majority's treatment as to prejudgment interest and attorney fees.